23-5170 McKee Foods Corporation v. BFP Inc. Oral argument, 15 minutes per side. Mr. Pickering for the appellant. Good morning, Your Honors. Bill Pickering for the appellant, McKee Foods Corporation. With me at council table is Mr. Mark Smitkey, my co-counsel. We've reserved, with the court's permission, five minutes for rebuttal. As of May of 2022, McKee's lawsuit for injunctive and declaratory relief had been pending for about six months. In November of 2021, the Tennessee Department of Commerce and Insurance had closed Thrifty Med's administrative complaints. About a month after that, Thrifty Med filed its answer. It did not reference the closure of the administrative complaints, did not say that the closure of the complaints really made any difference in the lawsuit, or certainly did not say that that made the case moot. Then in April of 2022, something happened. The Tennessee legislature passed what became later public chapter 1070, legislation which Thrifty Med had been actively lobbying for for several months and which made some changes to the Tennessee pharmacy legislation. After that, Thrifty Med and its council made a strategic decision. They decided to pause temporarily their quest for reinstatement to the McKee network and filed a stipulation stating that it, quote, remained to be seen whether Thrifty Med would pursue reinstatement in the future. Have they pursued reinstatement? They have not actively done so, Your Honor. Are they actively doing work there? Is there more to the story? They have not withdrawn any statement of intent to do so. They have not taken affirmative action to pursue reinstatement. Their actions really have been in terms of lobbying for the legislation both before and after the lawsuit was filed. It has just been kind of a stalemate in the last period of time since the district court's decision. Nothing has happened since the district court rendered its decision. There has at least been an affidavit, though, saying that they have no current intent to continue to pursue it. Actually, there was no affidavit. The only thing that is actually in the record under penalty of perjury by Mr. Bohannon, Thrifty Med's president, was his original stipulation in May of 2022 saying that it remained to be seen. What happened was that was all that was in the record. During the hearing before the district court six months later, on November 30, 2022, counsel for Thrifty Med made statements in court that, first of all, there could be reasons why Thrifty Med might not want to do business with McKee in the future. There was reference to some hostility on McKee's part toward Thrifty Med. Then, Judge actually pressed counsel for Thrifty Med further and said, What do you mean? How can you say you really don't know what your intentions are? To sort of put counsel on the spot, counsel then and only then responded, We have no current intent to pursue reinstatement to the plan. And that was not framed as a stipulation, that was just a representation from counsel? Correct. Certainly no affidavit, no declaration, just argument in court. Again, in response to questions from Judge Ashley, which expressed some skepticism on the judge's part. Counsel, in answer to Judge Regler's question a minute ago, I thought you implied that they had taken some action of some type after the statute had been amended. But then all that you've mentioned is action in connection with this litigation. So was there any action they've taken to be reinstated aside from what they've done in connection with the litigation after the statute passed? No, your honor. Thank you. Because Thrifty Med, I think unquestionably, made a voluntary strategic decision to forego its request for reinstatement temporarily, and this is important, while expressly reserving its rights to do so in the future, the burden was on Thrifty Med to show that there was no reasonable likelihood that Thrifty Med would pursue reinstatement in the future. This has been fully briefed. I don't think there's much dispute about that. What evidence did Thrifty Med introduce regarding its intentions? Nothing other than the declaration of Mr. Bohannon, which says, we don't know. It remains to be seen what Thrifty Med will be doing in the future. The other things, for example, Judge Davis, that you alluded to, just argument of counsel, nothing that would contradict what was in Mr. Bohannon's declaration, certainly nothing in the declaration indicating that Thrifty Med had no current intent to pursue reinstatement. Burden was on Thrifty Med. Thrifty Med did not satisfy that burden. McKee introduced lots of evidence which would indicate why Thrifty Med would be interested in pursuing reinstatement in the future. Can you help me with a procedural question? I've just forgotten the record. So this case was filed in November 2021, and it's not until May, end of May 2022, that Thrifty Med raises the mootness issue? That's correct. Were there any dispositive pleadings? Did they file a motion to dismiss earlier? What happened, Your Honor, was the parties had their Rule 26 discovery planning meeting in January. At that time, the parties agreed. There was no dispute about jurisdiction then. At that time, the parties agreed to a schedule for the filing of dispositive motions. Those dispositive motions were filed pretty much at the same time Thrifty Med filed its motion to dismiss on grounds of mootness. Rule 56. Did they answer? Both sides filed motions for summary judgment. But did they answer your complaint? Oh, yes. So they answered the complaint. These are sort of helpful questions. But they answered the complaint. Yes. There's no jurisdictional issues raised. Correct. The complaint was answered, I believe, in December of 2022. Jurisdiction was admitted. After the parties' discovery planning meeting, the court entered a scheduling order. And in the scheduling order, it said jurisdiction not in dispute. Mootness was not raised as a defense. And the answer was not raised until May of 2022 after the case had been pending for six months. And what was the status, the administrative complaints that were filed with the Department of Commerce and Insurance? Had those been resolved before your case was filed? Or were they still pending? We did not know, actually. Thrifty Med received notice that the complaints had been closed at roughly the same time that McKee's lawsuit was filed. It's a little bit of an interesting procedural issue. McKee didn't get notice of the closure of the complaints. Thrifty Med did. Thrifty Med did not mention the closure of the complaints in its answer. Well, do we know when Thrifty Med got notice that their administrative complaints had been closed? At the time that they were closed, which would be in, I believe, October. Oh, no, I'm sorry. Yes, in October and November of 2021, Thrifty Med received notice that the complaints had been closed. Thrifty Med did not mention that in its answer filed in December. Just briefly, Your Honor, regardless of Thrifty Med's intent, McKee faces a continuing risk of harm by virtue of the statutes that are on the books. And this is addressed in our briefs, of course. But basically, McKee has the dilemma of either we comply with the statutes, give up our rights under ERISA, and let anybody in the plan who wants to be in, or we leave the plan the way it is and risk enforcement action by the state. The risk of enforcement action is very real. The state announced in 2021 that it intended to enforce these laws against ERISA plans, but more importantly, the statute that we're talking about, Public Chapter 1070, contains what I think is just an egregious attack on ERISA preemption. There are specific provisions in Public Chapter 1070 that say this chapter will apply to ERISA plans. And basically, we are on notice that the state intends to enforce these laws, in our opinion, illegally against ERISA plans. The state is a party to this case. They intervened at the trial level shortly after the action was filed. They're a party to the lawsuit. They joined in the lawsuit specifically to preserve the enforceability of these statutes. Thank you. Any more questions? Judge McKee, any more questions? No, thank you. Thank you, Counsel. Good morning, Your Honors, and may it please the Court. Derek Mullins on behalf of BFP Incorporated, which does business in the Oodlewild, Tennessee community, is Thrifty Med Plus Pharmacy. Your Honors, this morning, our request is very simple and straightforward. And that is that this Court affirm the order that was entered by Judge Charles Ashley dismissing this case as moot due to a lack of case in controversy. Mr. Mullins, it seems to me that a lot of times we, as judges and you as lawyers, just make things a lot more complicated than they need to be. Explain to me why, in your opinion, your failure or refusal to disclaim any desire to reinstate this suit in the future. Why can't you just say that? Why have your counsel and your CEO seem to be just being cute? Your Honor, the perceived unwillingness to give a straightforward, just categorical, we will never do this in the future is for purely business reasons. The reality of the situation is that my client is a small business. It's a small, independently owned, independently operated pharmacy in a small town. The reality is these businesses are purchased and sold very frequently. And the concern is that if BFP Incorporated or Thrifty Med Plus, whichever name you want to ascribe to the entity, if they definitively said this corporation will never seek reinstatement, will never seek permission to participate in McKee's plan, that that could bind the hands of any successors that may come along. It could also potentially, in our perception, bind the hands of McKee. The reality is that there may be a change of business circumstances, whether it's on the side of the appellee or the side of the appellant, that could make reinstatement or a permission to participate advantageous. So why give him two opportunities to say what you just said? Why didn't you just say what you just said? Your Honor... All I'm saying is it seems to me when he gets to the court of appeals, it's a little too late to flesh out or change what one person said on both and a lawyer said as an officer of the court. Your Honor, I would submit that if the court goes back and reviews what my colleague, Russell Gray, said to Judge Ashley at the district court level, Mr. Gray, on rebuttal, explained exactly what I just said. The reality is there were business reasons that my clients could not definitively and just point blank state they would never, they or in reality their corporation, would never seek reinstatement or permission to participate. And that explanation doesn't appear in any of the briefs, does it? Your Honor, it does appear in our appellee brief. It's set forth... Thank you. Yes, Your Honor. Why didn't you say this in November of 2021 when the case was filed? Because at the time the case was filed, there was, contrary to Mr. Pickering's representation earlier, there was one administrative complaint that was still pending. Now, ThriftyMed will concede that before an answer was filed in December of 2021, that particular, that last outstanding administrative complaint had been adjudicated. It was involuntarily dismissed. And that's a very important point to keep in mind in light of this court's decision in TKR Cable v. Johnson. The other thing that I can represent to the court that admittedly is not in the record or in the pleadings, at the time that all of this was going on, that McKee was filing its complaint against BFP Incorporated, Greg and Julie Bohannon were suffering quite a bit of grief due to a severe sickness in the family due to COVID-19 and a subsequent death of Ms. Bohannon's brother, Mr. Bohannon's brother-in-law. Thus, administrative complaints that are being adjudicated from the Tennessee Department of Commerce and Insurance were understandably not in the forefront of their minds. Now, the other question that the court, I'm sorry, go ahead. Well, I'm sorry to hear that. But just as a legal question, the lawyers didn't do anything for quite a long time. Really not much changed other than the statute being amended, but it was amended in your favor in a sense. It took one of the issues off the table. Well, Your Honor. Oftentimes you have cases where the things get worse for you and say, okay, we give up. Things got better, and yet you're now sort of, you've sort of given up, although not entirely. Your Honor, I think you just hit the nail on the head from our perspective. The reason that we, to Mr. Pickering's point, suddenly filed a motion to dismiss under 12B1 for lack of subject matter jurisdiction was because there were two things that happened. Number one, yes, the administrative complaints were fully adjudicated and involuntarily dismissed all the way back in November of 2021. The second thing that happened, as Mr. Pickering stated, in April of 2022, the Tennessee General Assembly passed, and Governor Lee subsequently signed into law in May of 2022, what became known as Public Chapter 1070. It's worth noting that particular bill is not proper, was not properly before the Eastern District of Tennessee, nor is it before this Court, because the fact of the matter is, Okay, but what, okay, so that doesn't, I mean, the dispute was still alive, like nothing changed. I was trying to say maybe something did change, like one argument would be the case is not moved because of the statute. But now you're telling me the statute doesn't matter. I apologize, Your Honor. No, no, I mean, I'm just trying to piece together your best argument. That's what I was driving at. It was a two-fold situation. The administrative complaints had been dismissed, and then subsequently the statute was changed. In ThriftyMed's view, it removed any ambiguity that was addressed in McKee's complaint. Now, Mr. Pickering earlier indicated Removed any, the ambiguity about whether ERISA plans are included. Correct, Your Honor. That was one of the two legal questions. The other was preemption. Yes, Your Honor. That was still alive, quite a live issue. However, ThriftyMed at that point, when Mr. Bohannon stipulated on behalf of the corporation that ThriftyMed Plus had no intent of moving forward with a request for readmittance or a right to participate in McKee's health network under Public Chapter 569, that rendered the case moot because You're omitting a key word. You're omitting currently. Your Honor, what the currently You would have said what you just said. We probably wouldn't be here. Your Honor, what the currently was in reference to was in reference to Public Chapter 1070, which at the time that the parties appeared before Judge Atchley in November of 2022, that was still a potential question. However, again, Public Chapter 1070 is not really in controversy here. Let's shift gears just a little bit if we might. Why isn't this question of ERISA preemption and apparently the state's current intention to try to hold ERISA-bound companies to comply with this Tennessee Any Willing Provider law, why shouldn't McKee Foods be able to get that adjudicated? Your Honor, I'm not necessarily foreclosing the idea that McKee should be able to get an adjudication at that particular question. The problem is my client is not the proper party to have that fight. ThriftyMed has definitively stated that it has no... I thought the other counsel said that the state had intervened. They are a party. The state has intervened, Your Honor. However, I would... Well, why wouldn't the case continue, at least with the state as a party? If you don't want to participate, then just stand off to the side. Don't do anything. Well, Your Honor, there's a very real possibility that my client could be prejudiced if this case is remanded and my client is forced to participate actively in the case. You can settle the case. Your Honor, that's an entire... There's nothing to fight over. You can settle the case. You can figure out some way to resolve it. That's a possibility. However, the reality is my clients have addressed the supposed impending detrimental harm that was referenced in McKee's original complaint. Let's stop right there for just a second. I think Judge Ringler put his finger on it. I mean, you want us to say that this case is over as to all parties, done and done. If we rule for McKee and say it's not blue, there is jurisdiction, we send it back. Then you settle your side of it by agreeing whatever the terms are and the case continues on the preemption question relative to the state. I'm just having a lot of trouble figuring out why that, in your mind, is not the proper cause of course of action. Okay. Judge McKee... Let me add one other thing. Yes, Your Honor. Otherwise, then McKee has to refile a case, presumably against the state. I mean, I don't know who they sue, but it seems to me they're entitled to get this ERISA preemption resolved, not only with respect to you but anybody else. What's the point of us affirming and then they simply refile now three years later or whatever it is? What's been accomplished? Judge McKee, to answer that particular question, I'd like to take the court back to kind of the procedural history just for this very brief and specific point. Public Chapter 569 went into effect on July 1, 2021. On July 18, 2021, the Tennessee Department of Commerce and Insurance issued a public bulletin stating that this law, as written, applies to ERISA-governed plans. Thereafter was when ThriftyMed in September and October of 2021 filed their administrative complaints. The Tennessee Department of Commerce and Insurance subsequently and involuntarily dismissed my client's administrative complaints. Thereafter, and as Judge Ashley noted in his order, no additional administrative complaints were filed against McKee, either by my client or anybody else. The state stayed as much during oral argument in November of 22. What I would submit to the court is, as McKee has noted in its brief and in its reply, you have to demonstrate that there is a cognizable prospect of enforcement. I would point to the cases that McKee has cited from various jurisdictions. For instance, from this particular circuit, the NRA versus McCall. In that particular instance, the NRA was able to continue because it stated that, hey, there's a very real prospect that the ATF is going to enforce these laws that are on the books. There was a similar case cited out of the Fourth Circuit in Virginia. I thought your fellow counsel said that the state has said, in the bulletin or whatever it was, that this statute preempts, somehow the state thinks that they preempt ERISA. It's an interesting concept, other than involving insurance, I guess. I thought the states, I think they could also be accused of being cute in the sense that they say the statute applies, yet you're saying, well, they haven't gotten around to doing anything yet. Isn't that where we stand? Your Honor, there has been no enforcement action that ThriftyMed is aware of, nor is any referenced in the record on behalf of the state, as it applies to Public Chapter 1070, which is the law in the state of Tennessee as of right now. However, as previously stated, ThriftyMed has not filed any administrative complaints and has no intention of filing any administrative complaints against McKee with the Tennessee Department of Commerce and Insurance. But you can't speak to what the state is going to do, can you? I cannot speak to what the state is going to do. Are they here? I can't see the rest of your table. No, Your Honor, they are not. They didn't show up, so we can't even ask them the question. The state of Tennessee did not show up, nor did they file a brief. And that is the real problem here, Judge McKee. My client has been tasked with taking up this fight by itself. But as submitted, ThriftyMed is a locally owned, independently operated pharmacy. It should not shoulder the burden of fighting this fight over preemption. So go back and settle the case. Also, didn't you lobby to get this law passed? Your Honor, that is in the record. However, I would submit that both sides have referenced an email in which... I mean, it's a small town company, and I applaud that. But you were politically salient enough to have some role in getting this passed. You filed complaints. You can sell the company tomorrow, in which case there could be another complaint filed, apparently. I mean, you've sort of committed on the record to the current ownership not pursuing something, but I'm not sure how binding that representation is to us. You're not precluding the company being sold when you walk out the courthouse. Staps to someone else who could file something. They're just... I appreciate the state that could have stepped up and done more. But with the case in front of us, it, to me, feels like a live dispute that could be resolved on remand. We could settle it. Lots of ways to do it. Your Honor, if I may address... Go ahead. First and foremost, as it applies to the lobbying efforts, as Judge Ashley noted, there's no indication that those efforts were targeted at McKee. In fact, the record demonstrates the only document that McKee references either at the trial court level or in its subsequent briefs at the appellate... I don't know about the targeting matters. You changed the law in a way that was favorable to you, unfavorable to them, regarding the gist of this dispute. But it wasn't targeted at McKee. To the extent that it affected... What difference does it make who it was targeted to? Your Honor, I would analogize it to think of somebody who suffered some sort of harm at any course in their lives, because of gun violence, because of something that happens during their academic careers, and then they subsequently determined that I never want this to happen to anybody else. That's effectively what the Bohannans felt. They felt that their corporation was being victimized and bullied by a larger corporation that they no longer wanted to do business with. But they wanted to give other pharmacies the tools to address that particular question, to work in conjunction in the event that the state actually decided to enforce the laws that were placed on the books, they could do so. However, again, Judge Ray, getting back to your question... Sorry, Judge McKee. Let Judge Davis go ahead, then we'll get to Judge McKee. I just want to make sure that I understand your argument. Your argument is this was altruistic. They want to make sure that this doesn't happen to anyone else, and they, even though they have been pretty equivocal in their statements about whether or not they would pursue this in the future, they don't intend to pursue this. You articulated it better than I could have right now, Your Honor. The reality is it was an altruistic effort. The Bohannans and BFP Incorporated have no intention of making any moves against McKee. It was purely to give tools to similarly situated pharmacies to protect their rights moving forward. Well, I know we're out of time, but I guess the problem that I have with that is if that's the case, then I wonder why the stipulation wasn't more fulsome. It wasn't clearly like, hey, we don't even want to do business with you anymore. This is why we're doing this. And, Your Honor, I would submit the judicial admission that was made by Mr. Gray at the trial court level articulated as much. Perhaps not as clearly as it could have, but it did articulate as much. ThriftyMed has no intention of doing business with McKee moving forward. That said, for purely business reasons, it didn't want to completely forestall the possibility that a successor company that adopts the ThriftyMed Plus Pharmacy moniker could seek readmission in the future. That's not going to be any company that's owned by the Bohannans or anybody that's currently associated with the corporation. That's the representation that Mr. Gray made at the trial court level, and that's what I can make here today. And for those reasons, unless the court has any further questions... Mr. McKee, do you have other questions? Well, just a quick question. I don't want to belabor this, but I guess that's probably what I'm already doing. If you sell the stock of this corporation because they want to cash out, then I don't see why the result of this case, either favorable or unfavorable, shouldn't continue to be binding on the corporation. If you don't want to do that, then it's selling assets. Then somebody buys the assets, then whatever the result of this is, good or bad, isn't going to bind, corroborize the asset. Your Honor, that's entirely possible, but that is the exact reason that my clients, the current president, Greg Bohannon, did not want to bind the hands of somebody who comes along, buys the stock of the current corporation, and then wants to try to re-engage with McKee. The statements of a prior officer could theoretically be used to bind the hands of a corporation that is owned and operated by subsequent owners and officers. Thank you very much.  We'll hear the rebuttal. A little against my nature, I'll try to be brief. A lot has been said about these administrative complaints. I just want to clear up the record a little bit on that. Mr. Mullins referred to the adjudication of these complaints. The complaints really were not adjudicated. These were administrative complaints. When two of the three were closed, the Department of Commerce and Insurance simply said, our mediation efforts have failed, even though there actually weren't any, but our mediation efforts have failed. We're closing the complaints. The third complaint did reference ERISA and basically said we, the Department of Commerce and Insurance, don't have jurisdiction over self-insured plans like this. But two of the three just were closed with certainly no adjudication on the merits one way or the other. We had noted during the discovery planning meeting that no indication during that meeting had been given by counsel for ThriftyMed that the complaints had been closed. This was in January. We had this meeting, no discussion of the fact that the complaints was closed, and this was actually noted in the record below. In opposing ThriftyMed's motion to dismiss, we had pointed out that ThriftyMed, even though they knew about it, had not disclosed the closure of the administrative complaints, certainly not in their answer, but not even in the discovery planning meeting with counsel. And then ThriftyMed responded to that by saying that the closure letters were not documents supporting ThriftyMed's defenses under Federal Rule of Civil Procedure 26A and therefore no obligation to disclose. And that's in the record as R46, page ID number 466, footnote 1. And so I'm sympathetic with what Mr. Moen said about his client's personal situation, but ThriftyMed knew very, very well, and its counsel knew, that these complaints had been closed and they did not attach any significance to it until months, months later when it suited their interest to do so. The amendments to Public Chapter 569 that were contained in Public Chapter 1070 don't really impact the issues in this case. The particular code section under which ThriftyMed had pursued reinstatement was TCA 56-7-3120B. That statute was not significantly amended by Public Chapter 1070. Thank you. Can I interrupt and just ask a quick question? You've never amended the complaint to include the amended statute, have you? That is correct, Your Honor. We have not. So if we find this case does not move and we send it back, are you telling us that you would be amending the complaint so at least the judge has all the various statutes in their current form before him? I think that we probably would, Your Honor. At the time the statute became effective on January 1, 2023, the case had been fully briefed. So you're substituting the word currently for probably. You're both equivocating. Well, maybe I am. Sometimes you just have to admit that you are. I think it is likely that if the case goes back, we would amend. That's about all I can say. But I think it is important to note that at the time the amendments became effective, the case was fully briefed, had been argued before Judge Ashley, and was awaiting decision. Judge McGeek, anything else? Good? Judge McGeek, I think, all set? I think I'm in the middle of a fire alarm here. Ah. I'm hoping it's a test. Well, that's a unique situation. I'm not sure we've encountered that before. But for the purpose of the case, I think we're in good shape. So we thank both counsel for your arguments, and the case will be submitted.